## NEGLIGENCE AS BETWEEN AN ELECTRIC CAR AND A VEHICLE IN A CROWDED STREET.

[Circuit Court of Lucas County.]

THE LAKE SHORE ELECTRIC RAILWAY COMPANY v. MARY MAJEWSKI.

Decided, July 3, 1903.

*Negligence—What Constitutes "Looking" for a Car in a Crowded Street—Speed of the Car—Rights of Vehicles—Damages for Rupture.*

1. In an action for damages for injuries received in a collision between an electric car and a vehicle, the fact that the front end of the car had passed the vehicle before the collision occurred does not necessarily exonerate the company from liability.

2. Where a vehicle is being driven parallel with and very close to an electric railway track in a crowded street, and a car running at high speed attempts to pass, and could safely pass were the vehicle to continue in an absolutely straight line, negligence can not be charged against the driver because either through his fault or that of the team the vehicle deviated slightly as the car was passing and a collision occurred.

3. The rule as to speed laid down in the Kistler case (66 O. S., 326), is not applicable to an electric railway running through a city.

4. One driving upon a street occupied by an electric railway track is not guilty of negligence in going upon or attempting to cross the track, if having looked in the direction from which cars approach he sees there is no car so near as to be in danger of colliding with him if it is controlled with reasonable care.

5. Where it is in issue whether the car struck the wagon or the wagon struck the car, and the trial judge in the course of his charge says "it is undisputed that the car struck the wagon," the expression should be taken with others in the charge and interpreted as meaning that it is undisputed that there was a collision between the car and the wagon.

6. A Polish woman, accustomed to work in the fields, was thrown from her wagon in a collision with an electric car, and claimed to have received two ruptures. The testimony did not clearly establish that the accident caused the ruptures, but it did aggravate them. A judgment for $3,000 was entered below for the woman. *Held:* That the judgment should be reduced to $2,000.

PARKER, J.; HAYNES, J., and HULL, J., concur.

This is a proceeding brought to obtain the reversal of a judgment of the court of common pleas. Mary Majewski, in an action against the railway company, in which she charged negligence resulting in a personal injury to herself, recovered a judgment for three thousand dollars. The railway company prosecutes error to that judgment and insists that the verdict is against the weight of the evidence; that there was error in the charge of the court, and that the verdict is excessive in amount. It is questionable whether we would be required to review this record upon the weight of the evidence; indeed, we are inclined to the view that we are not, and the fact that we do, we do not wish to have regarded as a precedent in like cases. A couple of exhibits introduced in evidence do not appear as a part of the record. We are persuaded that we have in the record about all the merits of the controversy notwithstanding the absence of these exhibits; nevertheless, we would probably not be authorized to consider the case, or at least not to reverse it, upon the weight of the evidence; but in looking through it for other purposes we have necessarily considered that question—and we have gone through the record very carefully.

The claim of the plaintiff below was that she was driving along Superior street, between Adams and Madison streets, upon the west side, driving towards Madison street. After she had traversed perhaps two-thirds of the distance between those two streets, a collision occurred between one of the cars of the railway company and her vehicle—a little truck-wagon in which she was riding; that she was thrown to the pavement; that the wheels of the vehicle passed over her body and that she suffered serious injuries, to-wit, two ruptures, one on each side of her abdomen, and other serious and permanent injuries. She says that this collision was due to the negligence of the persons operating the car. The car, I should say, was going in the same direction in which she was traveling; and she says that the operators were negligent, in that one of them saw her—or by the exercise of reasonable care might have seen her—in a position of peril and might have stopped the car, but did not do so, but ran into her; that they did not give

such signals or warnings of their approach as were due to her, so that she might have observed them and turned aside; that they were running the car at an excessive rate of speed under the conditions there prevailing, in the center of the city, where the street was crowded, *i. e.*, at a speed of sixteen to eighteen miles an hour.

It is charged in the answer that she was guilty of contributory negligence; that she, in the exercise of ordinary care, could have seen this car approach and could have avoided the collision—that she must have seen it. But she, on the other hand, says that she looked and did not see it. It is in evidence that the street is straight for a long distance towards the north, from which direction the car was approaching, and it is claimed that if she had looked carefully she must have observed the approaching car. But the question still remains, whether she exercised such care under the circumstances as would exonerate her from the charge of contributory negligence?

It appears from her testimony and that of some of her witnesses that there were wagons—an oil wagon and some other wagons—upon the westerly side of the street, and that parts of these wagons came out so close to the track of the railroad upon which this car was approaching that it would have been exceedingly dangerous and difficult for her to attempt to pass between these wagons and the track with the car approaching; that as she undertook to make that movement and drive in there the car came upon her and struck her vehicle and broke it, in a degree. I believe it did not tip the wagon entirely over, but it turned it completely around so that after the accident was over, the horse's head was towards Adams street instead of towards Madison street, and the buggy was towards Madison; but it threw her out and also threw out her little girl.

Now on the part of the railway company, the motorman testified that he saw this woman approaching and came near to her at a time when she was in a position which he thought would be dangerous to her, and he brought his car to a stop; but it appears from the testimony that when he brought his car to a stop it had passed by her for some distance; and in order to find out whether he had struck her, or whether she had got out of the way, it was necessary for him to open the door to his vestibule. He said he looked out

and saw that she had cleared the car, and then he started up again and the theory of the defense is that she must have backed her vehicle into the car, or something must have occurred that was carelessness on her part—for the motorman says that immediately thereafter he heard a crash and he came to a stop again, and then the collision had occurred and the damage was done. But we do not think that the preponderance of the evidence supports this theory; we think it tends to support the theory that the car stopped after the crash and after the accident. It is insisted, however, by counsel that it fairly appears from all of the evidence that the very front of the car did not strike the vehicle—that the front of the car passed by it, and that the rear part of the car not being any wider than the front, and that having passed her with the front of the car they were justified in thinking they could go on and disregard her presence, and that if she afterwards came in contact with the car it must necessarily have been because of her own negligence or a mere accident which could not be the fault of the railway company. The testimony of the motorman was that he observed her in a position which he regarded as dangerous to her—very close to the track, where he was fearful there would be a collision. We do not think that if the very front end of the car passed the vehicle without touching it, it would necessarily follow that the railway company could not be held responsible for any accident or collision thereafter occurring. It is evident that this woman was in a position of peril as she was discovered there by the motorman, and we think that if he had been moving his car along the street, in such a way as to have had it under full control, he might have contrived to stop before he came to her or came upon her and before he had passed so far to the south that it became necessary for him, according to his own admission, to open the side door to find out what had happened. We think that, with the other testimony in the case, tends to show very clearly that the car was being run at a rate of speed that was under the circumstances excessive; that it was not held under full control so that the safety of others having a right to use the street might be properly preserved.

Upon that subject, the railway company asked the court to charge as follows:

"If the jury find from the evidence that the collision between the defendant's car and the plaintiff's wagon did not occur until after the forward end of the car had passed plaintiff's wagon and horse, the jury are instructed to return a verdict for the defendant."

This was not given, and the railway company complain. As I have said, it appears to us that the fact that the railway company had gotten the front end of the car past the wagon of the plaintiff was not enough to necessarily exonerate it, and therefore, we think the court did not err in refusing to give this request. There is another ground upon which it is urged that the court might have refused to give this, and that is, that the front of the car was the fender of the car and that is not as wide as the body of the car, and the fender of the car might have passed the vehicle and cleared it, yet the front of the body of the car might have struck it and yet under the charge the railway company would have been exonerated, which would have been clearly wrong; but, assuming that it meant the front of the body of the car, we think it should not have been given.

This woman finding herself in a position of peril was not required under the law to do that which we, looking upon the event after it happened, may see would have been the safest possible thing for her to do under the circumstances. Perhaps if the car had passed the four wheels of her vehicle and her horse, and she had kept on without an inch of deviation to the right or to the left—towards Madison street—the whole car would have passed the vehicle and horse safely; but under the situation, in the predicament that she found herself, and the consequent excitement of both horse and driver, due to such a situation, we do not think it would have been required of her that she should keep on in this undeviating course. It seems to us that the accident probably happened in this way: When the car came upon her and almost touched the wheels of her vehicle, that the horse, either of its own motion, or by her involuntary attempt to get it into a position of safety, turned towards the curb, and it is evident that such a movement would bring the front wheels of the vehicle closer to the body of the car than if they were going straight on the street. The part of the front wheels resting upon the pavement would act as a

pivot, and the moment her horse turned towards the curb to the right the difference between one-half of the diameter of the wheel would be brought over towards the car, that is to say, the vehicle would be brought that much nearer to the car than it was when the wheels stood in a position directed towards the south, and when this turn was made, the car then caught the front wheel—and it appears that the front wheels were broken loose from the buggy— and the vehicle was brought up against the car and turned and plaintiff was thrown out. Therefore we can not say and we do not think that this deviation from her course was an act of negligence upon her part. There is no evidence in the record tending to show that she deliberately, or otherwise, backed her vehicle into the car. We think that at the time the car struck the vehicle she was trying to get out of the way and the horse was trying to get out of the way, and so the accident occurred; and on account of the negligence of the company in running the car at that high rate of speed—for the preponderance of the evidence is that it was running at a rate of speed of perhaps twelve or fifteen miles an hour—so that the car could not be stopped before it reached the vehicle, we think the company should be held liable.

The rule as to speed laid down by the Supreme Court in the case of *The New York, Chicago & St. Louis R. R. Co.* v. *Kistler,* 66 Ohio St., 326, is cited by the railway company, but this is clearly not applicable to a street railway running through a city; it is applicable to a steam railroad operated in the open country. The rules upon the subject are stated in a great many authorities and are widely different from the rule laid down in the Kistler case. What we have said in the case of *Railway Co.* v. *Westenhuber,* in 12 Ohio Circuit Court Decisions, 22 (22 C. C., 67), we think is applicable to this case. That was a case of a collision between a car and a vehicle crossing a track at the intersection of two streets. This is not a case quite like that, it is true; this is a case where one drove parallel and near to the track between streets when a car was approaching. In that case we said:

"To attempt to drive across a track ahead of a street car when the car is so far away that, by the exercise of reasonable care on the part of the operators it might be stopped before reaching the place of crossing, is not negligence in our opinion. The rights of

the street car company and of the driver of the team being equal at the crossing, he had a right to go over the crossing ahead of the car, notwithstanding the fact that his doing so would require that the speed of the car must be retarded to prevent a collision. The one first at the crossing had the right to precede the other in going over the same. It is plain, the driver of the team must take into consideration the fact that the street car can not turn out, it must remain upon the rails, and he must take into consideration the fact that it can not stop instantly, that if it is going at a high rate of speed it may require considerable distance for it to stop; but taking all these things into consideration, if he enters upon the track when the car is so far away as that it may, by the exercise of reasonable diligence on the part of the operator, be stopped, he is not in our opinion guilty of negligence in thus entering upon the track."

Now that is the rule as to the right of persons to cross street car tracks at the intersection of streets. When they come upon the track of the company between streets, in other words, people driving vehicles along a street are not bound to keep away from the tracks of the street car company as they are to keep away from the tracks of a steam railroad in the open country. They have a right to use the street, as well the part of the street where the tracks are as other parts of the street, and to attempt to drive around vehicles as this woman did, although it would bring her close to the track or upon the track, and to drive there ahead of the street car when the car was so far away that by the exercise of reasonable care she might suppose she had time to pass by such vehicles would not in our opinion be negligence. The street car company can not insist that the speed of its cars shall not be retarded by people driving in ahead of the cars upon the street. When in the use of the street the exigencies require them to drive upon the tracks, they may drive there and the street car company must retard the speed of the car to allow them to use that part of the street as well as the parts where the tracks are not laid.

It is said that if this woman had looked she would have seen the car approaching, and it is argued that therefore she was bound to avoid coming near the track. If she had looked and seen the car approaching at such a speed and at such a distance as that it could be stopped by reasonable effort without running into her

vehicle, it would not have been negligence upon her part to enter upon the track.

Now what looking was she required to do, and what lack of it would be negligence upon her part, under the circumstances? One about to drive upon a track should look up the track to see if a car is coming. It seems to me that one is not required to anticipate that a car will come along a busy and crowded street at the rate of fifteen miles an hour, and therefore, look up the track for a quarter of a mile to see whether a car is approaching. Nor need one anticipate, if a car is approaching, that the motorman will not attempt to retard the speed of the car to prevent a collision. One may look up the track and see a street car approaching and yet not be negligent in driving upon the track ahead of it. When one should look up the track and see a car approaching a reasonable distance away, such a distance as the car might not reasonably be supposed to traverse before the person could go upon and over the track, and he discovers no car within that distance, we think that would be a reasonable observation of the track before entering upon it. Applying that rule in this case, we can not say this woman was negligent in failing to observe the approach of this car. So far as it appears, the car was at that time a long distance away from her when she turned in towards the track, and the reason it came upon her before she had time to get around these wagons was that it was coming down the street at a high rate of speed, and its speed was not retarded until the collision occurred.

Complaint is made of an expression by the trial judge in the course of his charge in describing the claims of the parties, where he says it is undisputed that the car which was operated by the defendant struck the wagon in which plaintiff was riding. It is insisted that that should have been submitted to the jury; that it was a vital question whether the car struck the wagon or the wagon struck the car. The railway company claim that the wagon did the striking and that it was backed up into the car; but we think, considering this expression with others running through the charge, that what the court meant, and what the jury understood the court to say was, that there was a collision between the car and the wagon, and the jury could not have understood that the court was

trying to withdraw from their consideration or influence their decision upon this disputed question of fact in the case.

It is also complained that this verdict is excessive. It is for three thousand dollars. The ground of complaint was that she suffered two ruptures. These we know are serious disabilities, and if it were made to appear upon this record clearly and satisfactorily that she had suffered these ruptures through this accident entirely, that these ruptures were initiated or begun by reason of the fall that she received upon that occasion, we would not feel inclined to disturb the verdict. But we are not satisfied upon that point. It appears that this Polish woman was a hard-working woman and a field laborer at home. She had been the mother of six children. That, as the doctor says—the carrying and the birth of so many children—necessarily weakens the abdominal walls and causes them to become flabby and more liable to injuries of this character; and it appears to us that the hard work which she did during the weeks after she had given birth to these six children might very naturally have brought this disability upon her. The doctor who attended her at the birth of her last child said he examined her carefully upon that occasion and she had no such rupture. But the time intervening between the birth of that child and the time she received this injury was an interval of six months, during which she had been actively engaged in hard work upon the farm. She and her husband and her daughter testify upon that. I should say that the doctor saw her on the day following that of the accident and discovered this rupture for the first time. The plaintiff, her husband and daughter testified to the disability and the testimony of none of them is very clear to the point whether or not she was ruptured before the time of this accident. The most that the plaintiff herself says, when asked the question, is that she did not suffer this pain before this accident; she does not say that she was not ruptured before the accident. The daughter simply testified that after the accident her mother did not work as she worked before; that she was obliged to be in and about the house and could not work in the field as she did before; and the testimony of the husband is substantially to the same effect. It appears that when she was thrown out of the buggy it ran over her, but

she was not so much disabled at the time but that she was able to be upon her feet, and it does not appear that she complained of any especial injury. She had bruises upon her person, and her clothes were mussed but most of the doctors who testified in the case say that if she had received such injuries as these, they must have resulted in excrutiating pain at the time, and they can not see how she could have conducted herself and done and attempted what she did after the accident. She was placed in the same vehicle and taken down to market space and then a carriage was sent for and she was placed in the carriage and taken home, a distance of some eighteen miles. It does not appear that she had any medical treatment that day at all. This physician was called in the next day. The hack-driver testifies that she said to him, when he asked her if she was the woman who was hurt, that she was the woman but that she was not much hurt. Thereupon she gathered up a lot of bundles and took them over to the hack and then climbed in herself; and it does not appear that she made any complaint about any pain in that long drive home. However, we think it is fairly apparent from the record that the rupture, if it had theretofore existed, was aggravated by this accident; but, we think, in view of the circumstances, that the verdict is too high and we are unanimously of opinion that it should be reduced to $2,000. We will allow the judgment to stand for $2,000, with interest, from the date—as it originally bore interest—if counsel for plaintiff will allow a remittitur to be entered; otherwise, it must be reversed on the ground that the judgment is excessive, *i. e.*, against the weight of the evidence as to the amount.

*Charles K. Friedman* and *Marshall & Fraser,* for plaintiff in error.

*Kinney, O'Farrell & Remelspach* and *Smith & Baker,* for defendant in error.